UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KRISTINE GORDON,

               Plaintiff,                       Case No.  1:16-CV-301

v.

                                           HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant,

_____/

## OPINION

       This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disabled widow's benefits.

### STANDARD OF REVIEW

       The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

       Substantial evidence is more than a scintilla, but less than a preponderance.  *See*

*Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-six years of age on the date of the ALJ's decision. (PageID.41, 86.) She completed high school and was previously employed as a factory assembler. (PageID.67, 210.) Plaintiff applied for benefits on March 19, 2012, alleging that she had been disabled since January 1, 2000, due to seizures, high blood pressure, vision loss, problems with her back and weight bearing joints, and a mental impairment. (PageID.86, 179–181.) This application was denied on August 24, 2012, after which time Plaintiff requested a hearing before an ALJ. (PageID.114–123.) On September 24, 2014, Plaintiff appeared with her counsel before ALJ Edward Morriss for an administrative hearing at which time both Plaintiff and her brother-in-law, Mr. Robert Crataville, testified. (PageID.64–82.) On November 26, 2014, the ALJ issued his written decision,

2

concluding that Plaintiff was not disabled. (PageID.41–63.) On January 29, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.26–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five.[2]  At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.46.)   At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) non-epileptic seizures; (2) depression; (3) anxiety; and (4) a cognitive impairment. (PageID.46.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.47–48.)  At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform medium work[3] with the following additional limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) avoiding exposure to hazards; and (3) the claimant is capable of understanding, remembering, and carrying out simple instructions.  (PageID.49.)

Continuing with the fourth step, the ALJ determined that Plaintiff had no past relevant work.  (PageID.55.)   At this point, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. Relying on the Medical-Vocational Guidelines, the ALJ found that Plaintiff retained the ability to perform a significant number of jobs. (PageID.56.)

---

[2]Before beginning with the analysis, the ALJ determined that Plaintiff met the non-disability requirements for widow's benefits.  She was the unmarried widow of the deceased insured worker, and had attained the age of fifty. (PageID.46.)

[3] Agency regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [The Commissioner] determine[s] that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

Accordingly, the ALJ concluded that Plaintiff was not disabled from January 1, 2000, through November 26, 2014, the date of decision.  (PageID.56–57.)

## DISCUSSION

### 1.     The ALJ's Step Two Analysis.

Though couched in a step five claim, the first claim in the order of the sequential analysis is Plaintiff's argument that the ALJ erred by failing to find that she had a severe visual impairment at step two.  (PageID.1288.)   The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("[S]o long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error").  A review of the ALJ's decision reveals that he considered the entire record when assessing Plaintiff's claim, including the record regarding her vision.  At step two, the ALJ noted Plaintiff suffered from cataracts, but had undergone successful surgery on both eyes in 2012.  (PageID.47.) In determining the RFC, the ALJ noted Dr. Edwards' statement in 2014 that Plaintiff was able to see his fingers, despite her statement that she could not do so. (PageID.52.)  This claim is therefore without merit.

### 2.     The ALJ's Step Three Analysis.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding

5

that the claimant is disabled. At step three of the sequential disability analysis, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. Here, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any listed impairment. (PageID.47–48.)  In so doing, the ALJ identified several specific listings, including Listing 11.03 (nonconvulsive epilepsy).   Plaintiff contends the ALJ's analysis of this listing was deficient.

The requirements of Listing 11.03 are as follows:

> Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03.  To meet the requirements of Listing 11.03, a claimant must also satisfy the introductory paragraph found in section 11.00 A.

> Under [Listings] 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed mediation is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood level. Where adequate seizure control is obtained only with unusually large doses, the

6

> possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00 A.  The ALJ's entire discussion of this listing is as follows:

> I have considered whether the claimant's neurological condition meets Listing 11.03.  While the claimant has a history of a seizure disorder with non-epileptic seizures, the record does not show the claimant has nonconvulsive seizures, which occur more than once per week with alteration of awareness and/or loss of consciousness and transient postical manifestations of unconventional behavior and/or significant interference with activity during the day necessary to meet the criteria of Listing 11.03.

(PageID.47.)  Plaintiff claims that the ALJ's analysis regarding Listing 11.03 was so "cursory and lacking in substantive analysis" that a reviewing Court could not perform a proper judicial analysis.  (PageID.1279.)  The Commissioner responds by claiming Plaintiff did not carry her burden of demonstrating she met all the elements of this listing, specifically the criteria contained in § 11.00 A, and thus any error was harmless.  (PageID.1308–1309.)  Plaintiff responds that the issue is not whether her impairments met or equaled the listing, but whether the ALJ adequately explained his step three determination.  (PageID.1318.)  While the Court agrees that the ALJ's analysis here was cursory, the Court does not find that remand is warranted.

As an initial matter, the Court observes that neither Plaintiff nor her counsel argued to the ALJ either in a pre-hearing brief or at the administrative hearing that she satisfied the requirements of Listing 11.03.   Indeed, in a pre-hearing brief counsel noted "[t]he claimant is not making a specific listing argument at this time." (PageID.262.)  Therefore, this is not a circumstance in which the ALJ failed to address an argument with which he was specifically presented.  *See, e.g.*,

7

*Oldenkamp v. Comm'r of Soc. Sec.*, No. 1:13-CV-1303, 2015 WL 505805, at *5 n.2 (W.D. Mich., Feb. 6, 2015) (noting that a relevant issue when assessing an ALJ's step three analysis is whether the claimant presented to the ALJ a claim or argument that he satisfied a particular listing).

Pointing in favor of Plaintiff's contention, however, is the Sixth Circuit's decision in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011). There, the court remanded the case after finding that the ALJ failed to provide any analysis of Listing 1.00 beyond a single conclusory sentence stating Plaintiff did not meet the listing's requirements. In remanding, the court noted that "the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Id.* at 416. While this weighs in favor of Plaintiff's position, this is not the end of the matter. In a later decision, the Sixth Circuit specified that an ALJ's failure to provide detailed analysis at step three is no basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). This is so because there was "no need to require the ALJ to 'spell out every fact a second time.'" *Id.* (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Here, the ALJ went on to discuss the medical record in detail and articulated ample support for his determination that Plaintiff did not satisfy Listing 11.03. (PageID.49–55.) Among other things, the ALJ discussed records that noted Plaintiff's symptoms were well controlled with medication and found Plaintiff's complaints typically were resolved with medication adjustments. (PageID.53, 268, 386–387, 529, 543, 1086.) The ALJ further noted two records indicating Plaintiff was exaggerating or feigning her symptoms. (PageID.1249, 1265.) Such provides substantial evidence supporting the ALJ's decision that Plaintiff did not meet all the requirements of Listing 11.03. While the decision may not be

organized as Plaintiff would prefer, such is not a basis for disturbing the ALJ's conclusion.

Moreover, as the *Forrest* court observed, harmless error applies when the claimant fails to demonstrate her impairments meet or medically equal the listings. *Forrest*, 591 F. App'x at 366. The court contrasted the facts of the case from that of *Reynolds* in which the court found it was possible that the claimant had put forward sufficient evidence to meet the listing. *Id.* Here, the record contains very little evidence of the sort required by § 11.00 A. Plaintiff fails to point to any objective clinical findings that demonstrate her symptoms persisted despite following prescribed antiepileptic treatment. Indeed, as the records referenced above demonstrate, Plaintiff consistently reported her medications worked in controlling her seizures. This claim of error accordingly fails.

### 3. The ALJ Did Not Err in Limiting Plaintiff to Understanding, Remembering and Carrying out Simple Instructions.

Plaintiff next contends the ALJ's inclusion of only a limitation to understanding, remembering and carrying out simple instructions in the RFC did not fully accommodate the moderate restrictions in concentration, persistence and pace he previously found. (PageID.1280.) This claim is without merit. The finding referred to by Plaintiff was made at step three of the sequential evaluation process when the ALJ was required to determine whether Plaintiff met the "paragraph B" requirements of listed impairments 12.04, 12.06 and 12.09. (PageID.47–48.) RFC is a separate determination made at step four of the sequential evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt.

9

P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530.

      An ALJ's evaluation of whether a claimant meets a listed impairment performed at step three is not an RFC determination.  Here, the ALJ explicitly addressed this point, stating "[t]he limitations identified in the 'paragraph B' . . . criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (PageID.48.)  *See* 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder.").

      As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding.  Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00.  Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10. The Court agrees with this analysis and concludes the ALJ did not err in failing to include step three "paragraph B" findings in Plaintiff's RFC. Accordingly, this claim of error is denied.

### 4.    The ALJ's Discussion of the Medical Opinions.

Next, Plaintiff argues the ALJ erred in evaluating several records.  Specifically, she claims the ALJ erred in failing to adopt the opinion of Dr. Leonard McCulloch, a consultative examiner, despite assigning it significant weight; failing to assign controlling weight to Dr. Jeff Benjamin; and failing to evaluate Plaintiff's GAF scores.  The Court disagrees.

### A.    Dr. McCulloch.

On May 12, 2011, Dr. McCulloch evaluated Plaintiff and rendered the following statement, noting that Plaintiff's:

> Abilities to understand, remember, and carry out instructions, that are simple and resemble those of the [Mental Status Exam], appear moderately impacted, especially in areas of memory, attention, and concentration, and processing information in a novel fashion. Abilities to respond appropriately to others, including co-workers and supervisors, and adopt to changes in a work setting, are opined to be at least moderately impacted, if by no other reason than that she hasn't done it in 33 years.  Abilities to perform work related activities in a reliable, consistent, and persistent manner, in spite of alleged abilities, are opinioned to be moderately to severely impacted by her co-occurring mental health problems. Workability, secondary to somatic problems, would need [to be] evaluated physically.

(PageID.432.)  After summarizing the above opinion in a footnote, the ALJ gave it "significant weight," finding that the opinion "is supported by the medical evidence and generally consistent with the residual functional capacity for unskilled work."  The thrust of Plaintiff's claim is that even though the ALJ purported to assign significant weight to this opinion, the ALJ did not do so when he included only a limitation for understanding, remembering, and carrying out simple instructions.

11

(PageID.1281–1282.)

Because Dr. McCulloch was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539–40 (6th Cir. 2014). The opinions of a consultative examiner are not entitled to any particular weight. *Peterson*, 552 F. App'x at 539; *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source, *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

After review, the Court finds no reason to remand. It is true, as the ALJ accurately noted, that Dr. McCulloch opined Plaintiff would have several moderate difficulties. But that is not in any way inconsistent with the RFC here. As noted above, RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see also Cohen*, 964 F.2d at 530. Dr. McCulloch did not state Plaintiff could not understand, remember, or carry out simple instructions, could not respond appropriately to others, could not adopt to work settings, or could not perform work related activities in a reliable manner. He only opined that Plaintiff would experience a certain amount of difficulty in doing so.

12

(PageID.432.)  While Plaintiff would have the Court read the opinion as inconsistent with the RFC, the Court does not see things the same way.  Accordingly, Plaintiff has identified no basis for relief and this argument is rejected.

    *B. Dr. Benjamin.*

   On April 4, 2014, Plaintiff was seen by Dr. Jeff Benjamin for epilepsy and cognitive slowing.  Dr. Benjamin's note from that visit stated "we" have tried Plaintiff on a number of medications.  On exam, she was oriented to person, place and time.  She had fluent speech, but cognitively was extremely slow.  She had full strength in her upper and lower extremities, but decreased range of motion of her cervical and lumbar spine.  (PageID.1217–1218.)  The doctor concluded that "the patient is absolutely fully disabled and could not possibly make gainful employment."  (PageID.1218.)  The same day Dr. Benjamin signed a letter indicating that Plaintiff was a patient he had been taking care of.  She suffered from intractable seizures and cognitive slowing.  He stated the "we" have tried numerable seizure medications.  He discussed a brain injury that he was able to identify on a MRI scan, and concluded that "[c]ognitively, there is no possible way [Plaintiff] could work in the workforce, even at low levels, and there is no possible way for her ever to make gainful employment."

   On July 21, 2014, Dr. Benjamin also completed an RFC worksheet that asked him to check a box indicating the severity of Plaintiff's limitations in twenty-five different categories.  In every category, Dr. Benjamin noted Plaintiff's abilities were the most severe, concluding her abilities were "poor or none."  (PageID.1252–1253.)  When asked for supporting comments, Dr. Benjamin referenced Plaintiff's treatment at the University of Arizona.  (PageID.1254.)  The ALJ summarized both of Dr. Benjamin's opinions and noted that "[a]lthough they have been carefully

considered, little weight is given to Dr. Benjamin's assessments, as these statements are not supported by his treatment records, and are inconsistent with Exhibits 25F-29F, in that these records do not document any evidence of objective findings or functional limitations.   The final responsibility for deciding whether a claimant is disabled is a determination reserved for the Commissioner." (PageID.54.) Plaintiff claims the ALJ failed to accord proper weight to this opinion under the treating source rule.  The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

14

must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Id.* at 376–77.

        As an initial matter, the parties dispute whether Dr. Benjamin qualifies as a treating source.  The Commissioner accurately notes that the record only definitively establishes one visit between Plaintiff and Dr. Benjamin. (PageID.1311.)  Plaintiff responds by referencing Dr. Benjamin's use of the term "we" in referring to prior treatment.  Alternatively, Plaintiff argues that "[e]ven if a treatment relationship had just begun, as Defendant argues, [Dr. Benjamin] was a treating physician." (PageID.1321.)  This latter assertion is without accompanying authority and is in conflict with existing authority.  It is well established that a physician who has examined a claimant only once does not qualify as a treating source.  *See Saal v. Comm'r of Soc. Sec.*, No. 1:08-CV-347, 2009 WL 3153163, at *6 (W.D. Mich. Sept. 29, 2009) (collecting cases).

        Giving Plaintiff the benefit of the doubt, however, the Court finds that the ALJ's discussion easily survives scrutiny even under the treating source rule.  The ALJ began by correctly noting that opinions regarding whether a claimant is disabled are reserved to the Commissioner. *See Buxton v. Halter*, 246 F.3d 762, 763 (6th Cir. 2001) (noting that while treating physicians'

15

opinions may be entitled to great weight, the ALJ is not bound by conclusory statements regarding whether a person is legally disabled, especially if the ALJ's decision is well reasoned); *see also* 20 C.F.R. § 404.1527(d)(1)-(2) (noting that no special significance is given to medical opinions concluding a person is disabled, or opinions reserved to the Commissioner, such as the nature and severity of a person's impairments). The ALJ, however, must still "explain the consideration given to the treating source's opinion(s)." *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting SSR 96–5p). The ALJ gave sufficient consideration here. Among other things, the ALJ found the opinion to be inconsistent with Dr. Edwards' May 21, 2014, treatment note, a visit Dr. Benjamin noted he was interested in reviewing. As noted above, Dr. Edwards found it interesting that Plaintiff stated she could not see the doctor's fingers in her right visual field, however it was clear to the doctor that Plaintiff was able to see them. It was also inconsistent with the "high suspicion" Dr. John Ganz had that Plaintiff was feigning symptoms. (PageID.1249, 1265.) In sum, the ALJ provided good reasons, supported by substantial evidence, for assigning less than controlling weight to Dr. Benjamin's opinions. This argument is rejected.

### C.    *Plaintiff's GAF Scores.*

Next, Plaintiff contends that her GAF scores of 45 and 50 indicate that she is disabled. (PageID.1286.) The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM–IV–TR) 32–34 (4th ed., text rev., 2000). The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," which "may be particularly useful in tracking the clinical progress of individuals in global terms."

16

*Id.* at 32.  The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms."  *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Comm'r of Soc. Sec.*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted); *see also* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings").  As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 F. App'x 761 (6th Cir. 2007):

> A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Id.* at 766.  In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).  Because the GAF score is not raw data and may have little or no bearing on Plaintiff's social and occupational functioning for purposes of determining disability under the Act,

the ALJ's alleged error was harmless and did not prejudice Plaintiff. Accordingly, contrary to Plaintiff's contention, her GAF scores of 45 and 50 are not independent grounds for a reversal or remand.

### 5.    The ALJ's Use of the Medical-Vocational Guidelines.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. At step five of the sequential process, the ALJ did not rely on the testimony of a vocational expert, but instead found that Plaintiff was not disabled based upon the medical-vocational guidelines. Specifically, the ALJ found Plaintiff not disabled pursuant to Rule 203.28 of the grids.[4] Plaintiff argues that it was inappropriate for the ALJ to rely on the grids in this matter. The Court agrees.

The issue here is the ALJ's consideration of the non-examining agency consultant, Dr. Lloyd Anderson, M.D., who opined that Plaintiff would have additional environmental limitations as well as limitations to only occasional balancing and crouching. (PageID.107–108.) The ALJ's discussion of the opinion is as follows:

---

[4] This particular rule applies to claimants who retain the ability to perform medium work. 20 C.F.R., Part 404, Subpart P, Appendix 2 § 203.00. Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c). The Court observes the ALJ appears to have made a typographical error by assigning an RFC for lifting 25 pounds occasionally and 50 pounds frequently. (PageID.49, 55.)

18

> The Disability Determination Service (DDS) medical consultants also reviewed the medical evidence of record pertaining to the claimant's functional limitations.  The State Agency medical consultants found that the claimant had the ability to perform medium work activity with no climbing ladders, ropes, or scaffolds, occasional balancing and crouching, and avoiding concentrated exposure to temperature extremes, humidity, noise and vibrations, and even moderate exposure to hazards.  (Exhibits 4A) I give considerable weight to the DDS assessment and concur with the medium exertional limitation and limitation for climbing and need to avoid hazards assessed by the DDS consultants; however, I have not given any restrictions as to exposure to temperature extremes, humidity, noise and vibrations because the record does not warrant them.

(PageID.54.)  Agency regulations state that the administration "will evaluate every medical opinion [they] receive."  20 C.F.R. § 404.1567(c).  However, as noted above, because Dr. Anderson is not a treating source, the "good reasons" requirement does not apply to his opinion.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  That said, the Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1).  This is because an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  Indeed, "[t]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of Health & Human Servs.*, 753 F .2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)). On this record, the Court cannot trace the path of the ALJ's reasoning.  This is because the ALJ failed to state whether he was adopting Dr. Anderson's opinion that Plaintiff could only occasionally balance and crouch. Such a limitation would call into question the ALJ's use of the grids because it would "substantially affect the more strenuous portion of the occupational base" for medium work.  SSR 85–15, 1985 WL 56857, at *7

(S.S.A. 1985).

The Commissioner correctly notes that an ALJ is not required to fully adopt a medical opinion. (PageID.1315.) Accordingly, while making no mention of the limitations on crouching and balancing, the Commissioner argues one can infer the ALJ did not adopt those opinions he found were not supported by the record. (PageID.1315.) The Court cannot do so here. Because the ALJ explicitly mentioned he was not adopting Dr. Anderson's environmental restrictions, but made no mention of the balancing and crouching limitations, it is not clear whether the ALJ's failure to mention the later limitations was an oversight or whether the ALJ found such restrictions were warranted. Accordingly this matter must be remanded to the Commissioner for further consideration. On remand, the Commissioner is directed to determine whether she is adopting Dr. Anderson's restrictions on balancing and crouching. If so, the Commissioner should consult a vocational expert to determine whether a substantial number of jobs exist in the national economy that Plaintiff can perform. If the restrictions are not adopted, the Commissioner should explain why not.

### 6.     Remand is Appropriate.

As detailed herein, the ALJ's conclusion that Plaintiff was not disabled is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Sec'y of Health & Human Servs*, 17 F.3d 171, 176 (6th Cir.1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist compelling evidence that Plaintiff is disabled. In sum,

evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).  This matter is remanded for further factual findings, including but not necessarily limited to, consideration of Dr. Lloyd Anderson's opinion that Plaintiff is limited to occasional balancing and crouching.

A separate judgment shall issue.


Dated: <u>December 30, 2016</u>                          <u>/s/ Robert Holmes Bell</u>
                                                                ROBERT HOLMES BELL
                                                                UNITED STATES DISTRICT JUDGE